Docket No. 12-56494

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

### CINDY M. WHITE

Plaintiff-Appellant,

vs.

### JPMORGAN CHASE BANK, N.A.

Defendant-Appellee

_____

On Appeal from an Order of the United States District Court

for the Central District of California – Los Angeles

Case No. 2:12-cv-03033-ABC-PLA, The Honorable Audrey B. Collins

_____

### ANSWERING BRIEF OF DEFENDANT-APPELLEE

_____

Glenn J. Plattner (Bar No. 137454)
Rosario L. Vizzie (Bar No. 220889)
Tony Tootell (Bar No. 235032)
James J. McGrath (Bar No. 260253)
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:  (310) 576-2100
Facsimile:   (310) 576-2200

Attorneys for Defendant-Appellee
JPMORGAN CHASE BANK, N.A.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee JPMorgan Chase Bank, N.A. certifies that it is a wholly owned subsidiary of JPMorgan Chase & Co.  JPMorgan Chase & Co. is publicly traded and listed on the New York Stock Exchange (symbol "JPM").  No publicly held corporation directly or indirectly owns 10% or more of JPMorgan Chase & Co.'s stock.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ........................................................................1

II.    JURISDICTIONAL STATEMENT ...............................................2

III.   ISSUES PRESENTED .................................................................3

IV.    STATEMENT OF THE CASE .....................................................4

V.     STATEMENT OF FACTS ...........................................................4

VI.    SUMMARY OF ARGUMENT ......................................................7

VII.   ARGUMENT................................................................................9

     A.   STANDARD OF REVIEW ..................................................9

     B.   THE FORECLOSURE CLAIMS WERE PROPERLY
        DISMISSED BASED ON CHASE'S AUTHORITY TO
        INITIATE FORECLOSURE ...........................................10

          1.   Chase Had Standing To Foreclose Based On Its Status As
             Beneficiary *And* As Servicer Of The Loan.............................10

               (a)   WaMu Was The Original Lender And Beneficiary
                    Under The Deed, And CRC Is The Trustee ..................10

               (b)   WaMu's Securitization Of The Loan Did Not
                    Divest A Beneficial Interest In The DOT......................11

               (c)   Alternatively, Chase Had Standing To Foreclose
                    As The Servicer Of The Loan.........................................14

               (d)   There Is No Requirement To Record The Transfer
                    Of The Note Or Deed .....................................................15

                (e)   White's Reliance On Several Cases Is Misplaced..........16

             2.   Alternatively, White Does Not and Cannot Allege Any
              Prejudice As A Result of the Loan's Securitization .................19

i

3.      White's Other Standing Theories Were Not Raised At The District Court Level And, In Any Event, They Lack Merit .........................................................................20

(a)    White's New Exhibits Do Not Support Her Claims.......21

(b)    White's New Assertion Regarding The P&A Agreement Is Unsupported.............................................22

(c)    White's New Assertions That WaMu "Did Not Exist" And That The Note Is "Void" Fail .....................23

(d)    Chase Was Not Estopped From Asserting Its Rights As The Servicer...................................................24

C.    WHITE ABANDONS ALL OF HER OTHER WRONGFUL FORECLOSURE ARGUMENTS ON APPEAL ...............................24

1.      Securitization Did Not Pay Off The Note.................................25

2.      White Does Not Contest That Chase Need Not Be The Holder In Due Course Of The Note...........................................25

3.      White Does Not Contest That The NOD Was Proper .............26

4.      White Does Not Contest That CRC Did Not Need To Receive Delivery Of The Note Or The DOT...........................26

5.      Alternatively, White Cannot Contest That The Foreclosure Claims Were Properly Dismissed Under The Tender Rule................................................................................27

D.    THE DISTRICT COURT PROPERLY RULED THAT THE TPA DOES NOT CREATE AN ENFORCEABLE CONTRACT TO MODIFY THE LOAN ...........................................28

1.      Chase Did Not Agree To Modify White's Loan .....................28

(a)    The Unambiguous Terms Of The Trial Plan Attached To The Complaint Control..............................28

(b)    Chase Was Not Required To Offer A Modification.......28

(c)    White's Trial Plan Agreement Was Not Entered Into Pursuant To The HAMP Guidelines .......................29

2.    Chase Evaluated White's Application And Denied It .............31

3.    Chase Did Not Agree To Refrain From Foreclosure................32

4.    The Implied Covenant Claim Depends on the Existence of an Enforceable Contract, Which Could Not Stand Here......33

E.    THE OTHER FORECLOSURE-RELATED CLAIMS WERE PROPERLY DISMISSED ...................................................34

1.    The Fraud Claim Was Properly Dismissed.............................35

(a)    The Recorded Documents Truthfully State Chase Was The Beneficiary Under The Deed of Trust............35

(b)    White Does Not Allege Reliance Or Damage................35

2.    The Quiet Title Claim Was Properly Dismissed ......................36

3.    The Purported Declaratory and Injunctive Relief Claim Was Properly Dismissed ..........................................36

F.    THE COMPLAINT WAS PROPERLY DISMISSED WITH PREJUDICE ...........................................................................37

VIII.  CONCLUSION AND REQUEST FOR RELIEF .........................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................9

*Baccei v. U.S.*,
632 F.3d 1140 (2011) .......................................................................20

*Baisa v. Indymac Fed. Bank*,
2009 U.S. Dist. LEXIS 103444 (E.D. Cal. Nov. 5, 2009)...................12

*Barrionuevo v. Chase Bank, N.A.*,
2012 U.S. Dist. LEXIS 109935 (N.D. Cal. Aug. 6, 2012) ........... 17, 18

*Berger v. Home Depot U.S.A., Inc.*,
476 F. Supp. 2d 1174 (C.D. Cal. 2007) .............................................33

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990)...........................................................33

*Casault v. Fed. Nat'l Mortg. Ass'n*,
915 F. Supp. 2d 1113 (C.D. Cal. 2012) .............................................15

*Castaneda v. Saxon Mortg. Servs., Inc.*,
687 F. Supp. 2d 1191 (E.D. Cal. 2009)..............................................16

*Corvello v. Wells Fargo Bank, N.A.*,
--- F.3d ----, 2013 WL 4017279 (9th Cir. Aug. 8, 2013)............................ 29, 30

*Debrunner v. Deutsche Bank Nat'l Trust Co.*,
204 Cal. App. 4th 433 (2012) .................................................. passim

*Dimock v. Emerald Properties*,
81 Cal. App. 4th 868 (2000) .............................................................26

*Diunugala v. JP Morgan Chase Bank, N.A.*,
2013 WL 5568737 (S.D. Cal. Oct. 03, 2013) ....................................18

*Ebner v. Sheehan*,
99 Cal. App. 2d 860 (1950)...............................................................23

*Eng v. Dimon*,
2012 U.S. Dist. LEXIS 120694 (N.D. Cal. August 24, 2012).................... 12, 35

*Fontenot v. Wells Fargo Bank, N.A.*,
198 Cal. App. 4th 256 (2011) .................................................. passim

iv

*Glaski v. Bank of Am., N.A.*,
   --- Cal. Rptr. 3d ----, 2013 WL 4037310 (Cal. App. 5 Dist. Aug. 8, 2013) .......18

*Greenwood v. FAA*,
   28 F.3d 971 (9th Cir. 1994)...................................................................................24

*Hafiz v. Greenpoint Mortgage Funding, Inc.*,
   652 F.Supp.2d 1039 (N.D.Cal.2009) ................................................. 11, 12, 24, 36

*Halajian v. Deutsche Bank Nat'l Trust Co.*,
   2013 U.S. Dist. LEXIS 20341 (E.D. Cal. February 14, 2013) ...........................11

*Herrera v. Fed. Nat'l Mortg. Ass'n*,
   205 Cal. App. 4th 1495 (2012) ......................................................... 12, 16, 18, 19

*In re Cedano*,
   470 B.R. 522 (9th Cir. 2012) ...............................................................................16

*Javaheri v. JPMorgan Chase Bank, N.A.*,
   2011 U.S. Dist. LEXIS 62152 (C.D. Cal. June 2, 2011) .............................. 16, 17

*Javaheri v. JPMorgan Chase Bank, N.A.*,
   2012 U.S. Dist LEXIS 114510 (Aug. 13, 2012)..................................................17

*Jenkins v. JPMorgan Chase Bank, N.A.*,
   216 Cal. App. 4th 497 (2013) ..............................................................................19

*Jolley v. Chase Home Finance, LLC*,
   213 Cal. App. 4th 872 (2013) ....................................................................... 21, 22

*Junger v. Bank of Am., N.A.*,
   2012 WL 603262 (C.D. Cal. Feb. 24, 2012)........................................................12

*Lane v. Vitek Real Estate Indus. Group*,
   713 F. Supp. 2d 1092 (E.D. Cal. 2010)......................................................... 11, 13

*Lazo v. Bank of Am., N.A.*,
   2012 WL 1831577 (N.D. Cal. May 18, 2012)......................................................29

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008).................................................................................9

*Little v. CFS Serv. Corp.*, 188 Cal. App. 3d 1354, 1358 (1987) ...........................26

*Lopez v. Chase Home Fin., LLC*,
   2009 U.S. Dist. LEXIS (E.D. Cal. April 9, 2009) ..............................................35

*Mabry v. Superior Court*,
   185 Cal. App. 4th 208 (2010) ....................................................................... 25, 28

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ............................................................9

*Marlin v. AIMCO Venezia, LLC*,
  154 Cal. App. 4th 154 (2007) ...........................................................36

*Newman v. The Bank of N.Y. Mellon*,
  2013 U.S. Dist. LEXIS 147562, at *3 n.2 (E.D. Cal. Oct. 10, 2013) ..................18

*Nguyen v. Calhoun*,
  105 Cal. App. 4th 428 (2003) ................................................... 23, 27

*Parcay v. Shea Mortg.*,
  2010 WL 1659369 (E.D. Cal. 2010)....................................................16

*Pasadena Live, LLC v. City of Pasadena*,
  114 Cal. App. 4th 1089 (2004) .........................................................32

*Permito v. Wells Fargo Bank, N.A.*,
  2012 WL 1380322 (N.D. Cal. April 20, 2012)....................................12

*Poway Royal Mobilehome Owners Ass'n v. City of Poway*,
  149 Cal. App. 4th 1460 (2007) .........................................................32

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990)..............................................................36

*Sacchi v. MERS, Inc.*,
  2011 U.S. Dist LEXIS 68007 (C.D. Cal. June 24, 2011) ....................16

*Sami v. Wells Fargo Bank*,
  U.S. Dist. LEXIS 38466 (N.D. Cal. March 21, 2012)........................11

*Shamsian v. Atl. Richfield Co.*,
  107 Cal. App. 4th 967 (2003) ...........................................................36

*Shkolnikov, et al. v. JPMorgan Chase Bank, et al.*,
  2012 U.S. Dist. LEXIS 177573 (N.D. Cal.. December 14, 2012)......................15

*Siliga v. Mortg. Elec. Regis'n Systems, Inc.*,
  219 Cal. App. 4th 76 (2013) .............................................................19

*Stebley v. Litton Loan Servicing*,
  202 Cal. App. 4th 522 (2011) ...........................................................27

*Swierkiewicz v. Sorema, N.A.*,
  534 U.S. 506 S.Ct. 992, 152 L.Ed.2d 1 (2002)..................................24

*Tri-Valley CAREs v. U.S. Dept. of Energy*,
  671 F.3d 1113 (9th Cir. 2012).............................................................24

*U.S. v. Elias*,
    921 F.2d 870 (1990)................................................................20

*Vella v. Hudgins*,
    151 Cal. App. 3d 515 (1984)..................................................28

*Vuki v. Superior Court*,
    189 Cal. App. 4th 791 (2010) ...............................................28

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012).................................................29

**Statutes**

28 U.S.C. § 1291 .......................................................................3

28 U.S.C. § 1332(a) ...................................................................2

Cal. Civ. Code § 1691(b) ..........................................................23

Cal. Civ. Code § 2015.5 ...................................................... 25, 26

Cal. Civ. Code § 2923.5 ............................................................25

Cal. Civ. Code § 2923.52 ..........................................................28

Cal. Civ. Code § 2923.53 ..........................................................28

Cal. Civ. Code § 2924(a) ..........................................................11

Cal. Civ. Code § 2924(a)(1)................................................ 13, 20, 23

Cal. Comm. Code § 3301....................................................... 25, 26

Cal. Comm. Code § 3309....................................................... 25, 26

**Rules**

Circuit Rule 28-2.7....................................................................4

Fed. R. App. Proc. 28(f).............................................................4

Fed. R. Civ. P. 12(b)(6)........................................................ 3, 4, 9

Fed. R. Civ. P. 54 ......................................................................3

## I.  __INTRODUCTION__

In a transparent effort to transform her case to create some basis for this Court to find the foreclosure sale of her property was void, appellant Cindy White ("White") attacks the beneficiary's authority to foreclose on multiple fronts, but consistently fails to discredit the sound reasoning of the decision below.  The District Court correctly recognized that White cannot make out the elements of the causes of action pleaded in her Complaint.  The fundamental flaw in her argument is that she admits she defaulted under her million dollar loan on her luxury fourth home and never cured the default.  Shifting the focus away from this dispositive fact, her opening brief also shifts many of her arguments previously made to the District Court.

White's arguments cannot undo the fact that JPMorgan Chase Bank, N.A. ("Chase") had standing to foreclose, whether as beneficiary of the deed of trust or as servicer of the loan.  Nor can White undo the law that securitization of the loan does not divest the trustee or beneficiary of the authority to foreclose.  Apart from Chase's clear standing to initiate foreclosure, White does not and cannot dispute that she expressly agreed to the appointment of CRC as the original trustee of the deed of trust securing repayment of her loan.  CRC had the unquestionable authority to issue and record the Notice of Default, Notices of Trustee Sale and Trustee's Deed.  Further, any of the purported "irregularities" in the foreclosure

sale itself that White alleges in her Complaint would not render the sale void, which White passively concedes by failing to challenge the initial District Court's holding that the tender rule barred her foreclosure challenges.  Fatal to her appeal, White also fails to allege or argue any prejudice resulting from a purported defect in the sale.  This concession along with her admission that she did not tender to reinstate her loan confirms the correctness of the District Court's holding.

None of White's remaining arguments finds any error in the District Court's reasoning.  White's claim of Chase's ostensible wrongdoing in not offering her a loan modification is unsupported and overlooks that her application is not controlled by HAMP regulations.  Moreover, the contractual terms of her trial payment plan did not obligate the bank to modify the terms of her loan, as White now admits the plan gave no guarantee of a modification.

Furthermore, as the District Court appreciated, White cannot amend her allegations to state viable claims because her complaint was verified and, as such, her allegations cannot be recanted or contradicted.  Amendment of the Complaint thus being futile, the District Court properly dismissed White's claims with prejudice.

## II.  <u>JURISDICTIONAL STATEMENT</u>

The United States District Court for the Central District of California had diversity jurisdiction over White's claims pursuant to 28 U.S.C. § 1332(a).  On

June 14, 2012, the District Court entered an order dismissing with prejudice all of the claims in the Complaint for failure to state a claim pursuant to F.R.C.P. 12(b)(6).  (Excerpts of Record ("ER") 4-20.)  The judgment is final under F.R.C.P. 54 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. (ER 2-3.)

## III.  ISSUES PRESENTED

1.     Whether the District Court properly dismissed the Foreclosure Claims—*i.e.,* Wrongful Foreclosure, Fraud, Quiet Title, and Declaratory and Injunctive Relief—where Chase never lost its power of sale and White fails to present allegations to support elements of each cause of action.

2.     Whether the District Court properly dismissed the Foreclosure Claims based on White's failure to satisfy the longstanding tender requirement, or, if dismissal was not proper on this ground, whether the Foreclosure Claims fail based on White's inability to allege any prejudice.

3.     Whether the District Court properly dismissed White's Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing claims where the non-HAMP Trial Plan Agreement ("TPA") nowhere guaranteed that White would receive a loan modification, as White admits, and White acknowledges that Chase fulfilled its obligation of considering White for a loan modification.

4.      Whether the District Court abused its discretion in dismissing White's Complaint with prejudice where White does not and cannot plead new facts without contradicting her verified allegations, making amendment futile.

Copies of the pertinent statutes and regulations are in an Addendum to this Brief pursuant to Fed. R. App. Proc. 28(f) and Circuit Rule 28-2.7.

## IV.   STATEMENT OF THE CASE

White filed her verified complaint ("Complaint") against Chase on April 6, 2012.  (ER 55 (Docket # 1).)  On May 3, 2012, Chase moved to dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).  (ER 56 (Docket # 11).)  White filed her Opposition two days late, on May 30, 2012, without explanation.  (ER 11, 57 (Docket # 13).)  The District Court nonetheless considered White's untimely opposition in deciding the motion to dismiss.  (ER 11.)

On June 14, 2012, the District Court granted Chase's motion and dismissed White's Complaint with prejudice.  (ER 58 (Docket # 17).)  On June 25, 2012, the District Court entered judgment against White.  (ER 58 (Docket # 19).)

## V.   STATEMENT OF FACTS

White alleges in her Complaint that she refinanced her existing loan on her fourth home for $980,000 in August 2006 ("Loan").  (ER 23 (¶ 7), 38.)  The Loan was secured by the property located at 427 Peach Grove Lane, Santa Barbara, California ("Property") through a Deed of Trust ("DOT").  (ER 22, 23, 40-43

(Compl. ¶¶ 1, 7, Ex. 2).)  WaMu was the Lender as shown in both the Note and the DOT.  (ER 23 (¶ 8); 38-43 (Exs. 1, 2).)  The DOT stated that the "Lender is the beneficiary under this Security Instrument."  (ER 41 (Ex. 2).)  CRC was named as the Trustee on the DOT.  (ER 23 (¶ 8); 41 (Ex. 2).)

On October 1, 2006, the Loan was securitized.  (ER 24 (¶ 10).)  White continued to make her monthly loan payments for at least two years after her loan was securitized, and she remitted all of her payments to WaMu.  (ER 25 (¶ 15).)

On September 25, 2008, Chase acquired certain of WaMu's assets, according to the terms of a Purchase and Assumption Agreement ("P&A Agreement") with the FDIC.  (ER 24 (¶ 11).)  This agreement is a public document available on the FDIC's official website.  After this acquisition, Chase notified White that it was now the servicer of her Loan (ER 25 (¶ 14)) and White then made her payments to Chase (ER 25 (¶¶ 15; 21); ER 45 (Ex. 3)).

After a "major financial disruption resulting from the economic crisis" (ER 25 (¶ 16)), White contacted Chase in October or November 2008 "to inquire about getting a loan modification in order to lower her monthly payments." (ER 25 (¶ 18).)  She defaulted in November 2008, allegedly for the purpose of qualifying for a loan modification.  (ER 15; *see also* ER 45 (Ex. 3)).  On May 26, 2009, CRC, as Trustee, recorded a Notice of Default ("NOD").  (ER 27 (¶ 26); 38-39 (Ex. 3).)  In August 2009, Chase offered White a three-month TPA (a type of forbearance

5

agreement) while the bank worked with her to avoid foreclosure. (ER 25 (Compl. ¶ 18); 54 (Ex. 7).) The TPA states, in pertinent part, that if she complies with its terms, "[Chase] will reevaluate your application . . . and determine if we are able to offer you a permanent workout solution." (*Id.*) Both parties complied with the TPA and for some months thereafter continued their efforts to qualify White for a modification. (ER 31 (¶ 41, ¶ 43)). White was denied a loan modification on August 13, 2010, but Chase allowed her to apply again. (OB 24.)

On August 26, 2010, more than one year after recordation of the NOD and after repeated efforts to work out her loan, CRC recorded a Notice of Trustee's Sale ("NOTS"), setting the sale for September 17, 2010. (ER 46-47 (Ex. 4).) The sale did not go forward on that date. On December 21, 2010, CRC recorded a second NOTS, setting the sale for January 14, 2011. (ER 49-50 (Ex. 5).) That sale was postponed until April 18, 2011 (ER 29 (¶ 33).) In the interim, on January 31, 2011, Chase denied White for a permanent loan modification for at least the second time. (ER 31-32 (¶ 44).)

On April 18, 2011, about two and one-half years after White defaulted, CRC held the foreclosure sale. (ER 52-53 (Ex. 6).) CRC executed the Trustee Deed Upon Sale ("TDUS") on April 25, 2012, and recorded it on April 29, 2012. (*Id.*) The TDUS conveyed the property to Chase. (*Id.*)

Almost one year after the sale, White filed her verified Complaint. (ER 21.)

## VI.  **SUMMARY OF ARGUMENT**

The District Court's dismissal should be affirmed for several significant reasons:

First, the mere securitization of White's loan did not eliminate the beneficiary's interest under the DOT.  Even if it was not the named beneficiary of the DOT, Chase also acquired the servicing rights, including the right to foreclose, pursuant to its P&A Agreement with WaMu's receiver, the FDIC.

Second, CRC had the unquestionable authority as Trustee of the DOT to foreclose and, even if it did not, was authorized to issue and record the NOD, the Notices of Trustee Sale, and the TDUS.  White cannot allege she was prejudiced by any alleged lack of authority in the foreclosure process, as she must.  White does not dispute she was in default.  The securitization of her Loan did not change her payment obligations, and she has made no allegations to support that some other heretofore unidentified lender would have refrained from foreclosure.

Third, Chase did not breach the non-HAMP TPA with White.  Under the plain terms of this agreement, Chase never agreed to modify White's Loan, but only to accept reduced payments for a limited time and, if certain conditions were satisfied, to reevaluate White's application for a modification thereafter.  Chase did reevaluate White exhaustively prior to conducting the foreclosure sale on behalf of the lender, and Chase ultimately denied a permanent modification of the terms of

7

her Loan on at least two occasions after several different reviews.  The TPA expressly reserved Chase's right to foreclose, but the bank nonetheless did not do so for twenty (20) months, affording White every opportunity to avoid foreclosure.  The District Court's dismissal of White's claim for breach of the TPA cannot be faulted.  Because the Breach of the Implied Covenant claim derives from the Breach of Contract claim, the lower court properly dismissed it as well.

Fourth, independently of the foregoing, each claim fails based on individual defects.  First, White does not plead the Fraud Claim with the specificity required under California law.  Second, the alleged misrepresentation was not a false statement, White did not rely on it, and it did not harm her.  Third, the Quiet Title Claim fails because a party cannot challenge a completed sale by this claim under applicable law.  Fourth, the purported "Declaratory and Injunctive Relief" Claim is a remedy rather than a cause of action – and dependent on the viability of the other defective claims.

Finally, the District Court, correctly recognizing that amendment of the Complaint was futile because any attempt to cure its defects would necessarily contradict verified allegations, properly dismissed the Complaint with prejudice.  The only suggested amendments to her Complaint that she raises for the first time in her substituted Opening Brief do not change that fact for the reasons discussed below.

## VII.  ARGUMENT

### A.  STANDARD OF REVIEW

An order granting a motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6) is reviewed *de novo*. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 526 (9th Cir. 2008).  All well-pleaded allegations of material fact are accepted as true and construed in the light most favorable to the non-moving party. *Manzarek*, 519 F.3d at 1030-1031.  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Id.* at 1031.

As dictated by the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  129 S. Ct. at 1940.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  The court should then "assume [the] veracity" of any remaining well-pleaded factual allegations and, finally, "determine whether [the allegations] plausibly give rise to an entitlement to relief." *Id.* at 1941.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Further, while denial of leave to amend is reviewed for abuse of discretion

9

(*Manzarek*, 519 F.3d at 1031), the District Court may deny leave to amend due to ". . . futility of amendment." *Leadsinger*, 512 F.3d at 532 (citation omitted).

## B. THE FORECLOSURE CLAIMS WERE PROPERLY DISMISSED BASED ON CHASE'S AUTHORITY TO INITIATE FORECLOSURE

White's Wrongful Foreclosure and related claims for Fraud, Quiet Title, and "Declaratory and Injunctive Relief" rely on the discredited theory that when WaMu securitized the Loan, all relevant parties automatically lost any interest under the Note and DOT. (ER 24 (¶ 10); OB 12, 19-20, 25-26.) Identifying the false premise (ER 12), the District Court dismissed all of these claims because "Plaintiff has not alleged any facts to plausibly suggest that the securitization of the Note eliminated all beneficial interest Chase had in the DOT." (ER 14.)

### 1. Chase Had Standing To Foreclose Based On Its Status As Beneficiary *And* As Servicer Of The Loan

#### (a) WaMu Was The Original Lender And Beneficiary Under The Deed, And CRC Is The Trustee

White does not and cannot dispute that WaMu is identified as the "Lender" in the DOT (OB 19; ER 23 (¶ 8); 38-42 (Exs. 1, 2)). White also does not and cannot dispute that the DOT establishes that the "Lender is the beneficiary under this Security Instrument." (OB 19; ER 41.) Accordingly, WaMu's unquestionable status was that of lender and beneficiary of the Loan. White merely remarks that there was a "missing Substitution of Trustee" (OB 9 (¶ 16)), but this apparent

10

attack on CRC's trustee status is unfounded. White does not and cannot dispute that CRC is identified as the "Trustee" in the DOT (OB 19; ER 23 (¶ 8), 41), and was properly identified as the foreclosing entity under the NOD, NOTS, and TDUS (ER 44-53). Accordingly, there was no missing substitution of trustee, despite White's contrary assertion, and therefore CRC was unquestionably empowered to record the NOD, NOTS, and TDUS. *See* Civ. Code § 2924(a).

**(b)**    **WaMu's Securitization Of The Loan Did Not Divest A Beneficial Interest In The DOT**

White also alleges and argues on appeal that when WaMu securitized the Loan soon after its origination  (ER 24 (¶ 10); OB 19), WaMu, and by extension Chase, lost the right to foreclose. This conclusory argument thus is based on White's mistaken belief that the spreading of risk of payment default through the Loan's "securitization" somehow divested the beneficiary of its power of sale under the DOT, but this theory is meritless.

Contrary to White's position, courts have repeatedly recognized that "securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust." *Halajian v. Deutsche Bank Nat'l Trust Co.*, 2013 U.S. Dist. LEXIS 20341, at *22 (E.D. Cal. Feb. 14, 2013) (quoting *Sami v. Wells Fargo Bank*, U.S. Dist. LEXIS 38466, at *5 (N.D. Cal. Mar. 21, 2012).  A beneficiary does not lose its interest in a loan when it is assigned to a mortgage trust pool. *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099

11

(E.D. Cal. 2010); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009); s*ee also Permito v. Wells Fargo Bank, N.A*., 2012 WL 1380322, at *5 (N.D. Cal. April 20, 2012); *Junger v. Bank of Am., N.A*., 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012). The Northern District of California recently applied this principle to another WaMu loan, ruling: "[E]ven if, as [borrower] alleges, the loan was securitized, such securitization would not have divested [WaMu], or JPMorgan as its successor, of the right to foreclose." *Eng v. Dimon*, 2012 WL 3659600, at *2 (N.D. Cal. Aug. 24, 2012).

The recorded DOT, Plaintiff's own allegations and exhibits, and uniform authority all confirm that securitization did not strip the beneficiary of its right to foreclose. Following White's default, Trustee CRC recorded the TDUS to grantee Chase, as the foreclosing beneficiary. (ER 52.) Nor does White support her own theory that Chase is not the beneficiary. California courts have held that in order to challenge an assignment, a plaintiff is required to allege facts to support that the defendant "did not receive a valid assignment of the debt *in any manner.*" *Fontenot v. Wells Fargo Bank, N.A.,* 198 Cal. App. 4th 256, 271-72 (2011); *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1506 (2012) (same). However, here, White fails to allege any relevant facts that another entity possessed the power of sale under the DOT or took any action as the Loan's "beneficiary" in the four years since her default. On the basis of these

uncontroverted facts and established law, the District Court properly held that

"Plaintiff has not alleged any facts to plausibly suggest that the securitization of the

Note eliminated all beneficial interest Chase had in the DOT."  (ER 14.)

The two cases cited by the District Court, *Debrunner* and *Lane*, apply

directly to defeat the Foreclosure Claims because both dealt with deeds of trust.

As the Court in *Lane* held, Courts have repeatedly rejected White's theory that a

lender and its agents lose the authority to initiate foreclosure proceedings when the

"loan was packaged and resold in the secondary market, where it was put into a

trust pool and securitized."  *Lane*, 713 F. Supp. 2d at 1099.  Similarly in

*Debrunner*, the plaintiff claimed that defendants had no right to foreclose without

proof of physical possession of and ownership rights to the promissory note.

*Debrunner v. Deutsche Bank Nat'l Trust Co.*, 204 Cal. App. 4th 433, 436 (2012).

The Court affirmed the decision of the trial court sustaining defendants' demurrer

without leave to amend, explaining "nothing in the applicable statutes. . . precludes

foreclosure when the foreclosing party does not possess the original promissory

note."  *Id.* at 440.  The court specifically noted that Civil Code § 2924(a)(1)

permits a notice of default to be filed by the "trustee, mortgagee, or beneficiary, or

any of their authorized agents."  *Id.*

White's argument that the District Court's reliance on *Debrunner* and *Lane*

is misplaced because these cases concerned "the authority of Note holders alone

and do not apply to a plaintiff who has alleged the foreclosing party was not the beneficiary under a deed of trust" (OB 41) is incorrect. *See Lane*, 713 F. Supp. 2d at 1098 (plaintiffs' basing their wrongful foreclosure on "numerous improprieties in the assignment, transfer and exercise of power of sale contained in the Deed of Trust, and [alleging] that … CWRC[] is not properly appointed or authorized by the true beneficiary to foreclose upon the Subject Property"); *Debrunner,* 204 Cal. App. 4th at 435 (rejecting argument that "an assignment of a deed of trust is of no legal effect without the actual transfer of the corresponding promissory note").

<b>(c)    Alternatively, Chase Had Standing To Foreclose As The Servicer Of The Loan</b>

White's unsupported claim that Chase was not the beneficiary does not address Chase's rights as loan servicer to direct the Trustee CRC to foreclose.  (ER 24 (¶ 14).)  Significantly, White does not and cannot dispute that Chase acquired the servicing rights to her Loan, giving Chase the right to direct the trustee to foreclose irrespective of beneficiary status under the DOT.  Recognizing Chase's rights to the Loan, White acknowledges that Chase purchased "WaMu's assets according to the terms of a Purchase and Assumption Agreement dated September 25, 2008" (ER 24 (¶ 11)) and "notified [her] that it was now the servicer of the Loan"  (ER 25 (¶ 14)).  White also attaches an exhibit to her Opening Brief from the Federal Financial Institutions Examination Council (FFIEC) which further confirms that WaMu's remaining assets were transferred to Chase.  (OB Ex. B.)

14

Moreover, White admits applying to Chase for modification of the Loan terms. (ER 25 (¶ 18).)  Any argument that Chase was not her servicer with standing to foreclose would thus be incongruous with White's own verified allegations.

The District Court for the Northern District of California recently ruled on this precise issue, namely, whether Chase assumed WaMu's interest in a plaintiff's loan as the servicer pursuant to the P&A Agreement and thereby also acquired the accompanying right to foreclose.  *Shkolnikov v. JPMorgan Chase Bank*, 2012 U.S. Dist. LEXIS 177573 (N.D. Cal. Dec. 14, 2012).  In deciding that issue, the District Court looked to the P&A Agreement stating that Chase "specifically purchase[d] all mortgage servicing rights and obligations of [WaMu]."  *Id*. at *38.  The District Court found that "Chase has the right as servicer to initiate foreclosure."  *Id*.; *see also Casault v. Fed. Nat'l Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1136 (C.D. Cal. 2012) (holding servicer-defendants had the right to foreclose).

As in *Shkolnikov*, in this case White clearly alleges that Chase became her servicer after purchasing WaMu's assets.  (ER 25 (¶ 14).)  Therefore, it is undisputed that Chase, as the Loan's servicer, could initiate the foreclosure even if Chase was not the beneficiary.

### (d)     There Is No Requirement To Record The Transfer Of The Note Or Deed

White's assertion that Chase lacked standing to foreclose because neither the transfer of the Note nor the beneficial interest in the DOT was recorded (OB 14-

15; ER 24 (¶ 13)) is likewise unsupported and unavailing. It is well established that there is no requirement in California to record an assignment of a note or beneficial interest in the deed. *Fontenot*, 198 Cal. App. 4th at 271-72 ("assignments of debt … are commonly not recorded"); *Herrera*, 205 Cal. App. 4th at 1504-06; *Parcay v. Shea Mortg.,* 2010 WL 1659369, at *31, (E.D. Cal. 2010) ("There is no requirement under California law for an assignment to be recorded in order for an assignee beneficiary to foreclose."); *see also Castaneda v. Saxon Mortg. Servs., Inc.,* 687 F. Supp. 2d 1191, 1201 (E.D. Cal. 2009) (quoted favorably in *In re Cedano*, 470 B.R. 522, 531 (9th Cir. 2012) (noting that beneficial interest of deed of trust may "repeatedly" be assigned without recordation).

### (e)    White's Reliance On Several Cases Is Misplaced

White's primary reliance on *Sacchi v. MERS, Inc.*, 2011 U.S. Dist LEXIS 68007 (C.D. Cal. June 24, 2011) is misplaced. That case involved a defect in the recorded substitution of trustee where the assignment of the deed of trust from MERS to a foreclosing beneficiary was executed *after* recordation of the Substitution. *Id.* at *16-*17. The district court ruled that the substitution of trustee recorded by the foreclosing beneficiary was invalid, making all of the acts flowing from it also invalid. *Id.* By contrast, no such allegation exists in the present case because there has been no substitution of trustee, but instead CRC always has been

16

the Trustee under the DOT.  (ER 23 (¶ 8); 41.)

*Javaheri v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 62152 (C.D. Cal. June 2, 2011), on which White also relies, supports Chase's position rather than hers.  The WaMu-originated note in that case was first transferred to Washington Mutual Securities Corporation and then to an investment trust before Chase assumed WaMu's assets under the P&A Agreement.  *Javaheri*, 2011 U.S. Dist. LEXIS 61152, at *13 ("*Jahaveri I*").  The court in *Jahaveri I* found the transfer of the note, standing alone, did not divest Chase's ability to foreclose, requiring additional facts to demonstrate beyond a "speculative level" a lack of ownership of the note.  *Id.* at *13-*14.  In *Jahaveri II,* the Court granted Chase's Motion for Summary Judgment by finding that "although JPMorgan cannot produce the original Note and has not recorded its interest in the Note, these actions are not required for non-judicial foreclosure in California and thus are inapposite to Javaheri's claim for wrongful foreclosure." *Id.* at *14.[1]  Taken together, the two cases reinforce the general rule that the pre-assumption transfer of the note does not affect the deed of trust or otherwise deprive Chase of authority

---

[1] *Javaheri v. JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist LEXIS 114510, at *14 (Aug. 13, 2012) (*"Jahaveri II").* The Court in *Javaheri I* had stated without analysis or citation to any case law or cited to other authority that Chase was required to record its interest in the note.  Inasmuch as a note is a negotiable instrument and not filed in land records, the statement is impossible to reconcile with prevailing law holding otherwise.  *Javaheri II,* however, properly focused on the *in rem* proceeding under the DOT.

to foreclose.

White's reliance on *Barrionuevo v. Chase Bank, N.A.*, 2012 U.S. Dist.

LEXIS 109935 (N.D. Cal. Aug. 6, 2012) (OB 35-38) also is misplaced.

*Barrionuevo* dealt with the specific issue of whether plaintiffs' loan had actually

been securitized. *Id.* at *20. Noting the issue as raised by defendants would

require "further examination" and raised "factual uncertainties," the District Court

denied the defendants' motion to dismiss and did not reach the merits of the

securitization argument that district courts have consistently rejected. *Id.* By

contrast in the present case, Chase and the District Court have taken as true

White's allegation that the Loan was securitized and no factual uncertainties exist

on that point. (*See* ER 14.)[2]

The trial court's ruling here (ER 14:17-15:14) is thus well supported,

warranting this Court's affirmance.

---

[2] White also remarks that the "issues and facts are also similar to the recent …
*Glaski* case" (OB 38), but she never supports this claim. *Glaski v. Bank of Am.,
N.A.*, --- Cal. Rptr. 3d ----, 2013 WL 4037310, at *9 (Cal. App. 5 Dist. Aug. 8,
2013). *Glaski* is nonetheless inapposite because unlike the plaintiff in *Glaski*,
White never challenges the securitization of her Note but instead uses the Loan's
securitization to try to support her theory that it divests the beneficiary of its right
to foreclose. This theory has not only been consistently rejected (*see supra* Sec.
VII.B.1.(b)), but also *Glaski* itself has come under recent scrutiny because, in part,
it failed to analyze prejudice as shown *supra* in Section VII.B.2. *Diunugala v. JP
Morgan Chase Bank, N.A.*, 2013 WL 5568737, at *8 (S.D. Cal. Oct. 03, 2013); *cf.
Newman v. The Bank of N.Y. Mellon*, 2013 U.S. Dist. LEXIS 147562, at *3 n.2
(E.D. Cal. Oct. 10, 2013) (*Glaski* in "clear minority").

## 2.    <u>Alternatively, White Does Not and Cannot Allege Any Prejudice As A Result of the Loan's Securitization</u>

Regardless of whether Plaintiff could allege facts to support the assertion that Chase did not have the right to foreclose, her lawsuit still fails because she cannot allege prejudice.  "[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests."  *Fontenot*, 198 Cal. App. 4th at 272; *accord Herrera*, 205 Cal. App. 4th at 1507; *see also Siliga v. Mortg. Elec. Regis'n Systems, Inc.*, 219 Cal. App. 4th 76, 85 (2013) (holding that plaintiffs failed to adequately challenge the foreclosure based on the assignment of their loan because they did not allege prejudice).

Just as White here alleges, the plaintiffs in *Fontenot, Herrera*, and *Siliga* challenged the foreclosure based on the assignment and securitization of the interest in the deed and note, which the respective courts held could not proceed in absence of allegations showing prejudice.  *Id.*  As the *Fontenot* court explained, and *Herrera* repeats:

> Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor.  As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note.  Plaintiff effectively concedes she was in default, and she does not allege that the transfer … interfered in any manner with her payment of the note, nor that the original lender would have refrained from foreclosure under the circumstances presented.  [If the loan was indeed not properly assigned to the successor-beneficiary], ***the true victim was not plaintiff but the original lender, which would have***

19

> *suffered the unauthorized loss of a $1 million promissory note.*

*Id.* (cited favorably in *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515 (2013).

Here, as in *Fontenot, Herrera*, and *Siliga*, if the transfer of the Loan somehow deprived Chase of the right to foreclose, White still has no valid claim. White concedes she was in default (ER 25 (¶ 15)), knew who her servicer was (*see supra* Sec. VII.B.1.(c)), and fails to allege facts how the foreclosure would have proceeded any differently. Accordingly, if Chase indeed lacked the authority to foreclose because of the securitization, the true victim was not Plaintiff but another lender, which would have suffered the unauthorized loss of a $1 million promissory note. *See Fontenot*, 198 Cal. App. 4th at 272.

### 3.   White's Other Standing Theories Were Not Raised At The District Court Level And, In Any Event, They Lack Merit

None of White's other standing theories and documents presented for the first time on appeal (OB 4-8, 13-15, Exs. B-D) was raised in her Complaint or in her briefing to the District Court. Controlling law thus militates against considering them on appeal. "Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." *Baccei v. U.S.*, 632 F.3d 1140, 1149 (9th Cir. 2011); *see also U.S. v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990) (facts and documents not in the

record at the district court level are also generally not considered on appeal).

These new theories also fail for the other reasons below.

### (a)     White's New Exhibits Do Not Support Her Claims

White's new contention that Exhibits C and D to her Opening Brief show the foreclosure was directed by "a stranger to the contracts: Fidelity National Foreclosure and Bankruptcy Solutions" ("Fidelity") (OB 14-15) is not supported. Nor does or can White credibly dispute that Fidelity was an agent of Chase, much less that California's non-judicial foreclosure statute specifically allows an agent of the beneficiary to initiate foreclosure. Civ. Code 2924(a)(1). One of the newly introduced exhibits is a letter to CRC that explicitly states that the "FORECLOSURE SHOULD BE IN THE NAME OF: JPMorgan Chase Bank, National Association" (OB Ex. D (CRC-00001)), which it was (ER 52), thus tending to confirm Fidelity's agent status. This exhibit certainly does not support White's claims, but instead supports the District Court's conclusion that amendment would be futile.

Nor does or can White offer facts to support her new theory that "there was never any transfer in the obligation (Note) that would have granted any rights, title, and interest as beneficiary" of the DOT to Chase because there was no indorsement on the Note. (OB 15.) Here, White misapprehends that a copy of a note does not establish that the foreclosure was improper or even that the original note was no

indorsed.  California law is settled that the foreclosing party, here CRC, was under no obligation to be in possession of the Note at all, let alone required to possess an indorsed note.  *Debrunner*, 204 Cal. App. 4th at 440 ("[N]othing in the applicable statutes . . . precludes foreclosure when the foreclosing party does not possess the original promissory note.").

### (b)  White's New Assertion Regarding The P&A Agreement Is Unsupported

Citing to *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872 (2013), White newly asserts that "Chase forwarded a 39 page P&A [Agreement] into the records of the court."  (OB 4-6 (¶¶ 2, 5).)  White's assertion is puzzling because Chase never provided the P&A Agreement in this matter and there is no such document contained within the Excerpts of Record.  This appears to be nothing more than a contrived attempt to question the P&A Agreement by borrowing the same allegations as in *Jolley*, but without any factual support.

Even if Chase had "forwarded a 39 page P&A [Agreement] into the records of the court" as White contends, *Jolley* would still not apply.  *Jolley* involved whether Chase had acquired the <u>liabilities</u> of WaMu and could therefore be liable for the acts of WaMu during the loan's origination.  213 Cal. App. 4th at 883, 891-92.  In the present case, by contrast, the legal effect of the P&A Agreement is not at issue: White (1) admits that Chase purchased certain of WAMU's assets,  and (2) attaches an FFIEC document which further confirms that WaMu's remaining

22

assets were transferred to Chase.  (*See supra* Sec. VII.B.1.(c).)

### (c) White's New Assertions That WaMu "Did Not Exist" And That The Note Is "Void" Fail

White also contends for the first time on appeal that, because Washington Mutual Bank, F.A. changed its name in 2005, it somehow became "non-existent." (OB 5-8, 12 (¶¶ 3, 4, 6-8, 10-13, 15, 24).)  That a "non-existent" entity provided funds to refinance White's loan is both non-sensical and refuted by White's own exhibit.  (OB Ex. B.)  Further, White's conclusion that because WaMu changed its name her note is somehow "void ab initio," and thus she does not have to repay any of the money that she received to refinance her fourth home, is just as unavailing.  (OB 5, 8 (¶¶ 3, 15).)  California requires that an attempt to cancel or rescind a note requires that the requesting party restore anything of value that she received from the loan.  Civ. Code § 1691(b); *Ebner v. Sheehan*, 99 Cal. App. 2d 860, 864 (1950).  The requirement of restoration is based on the policy that a borrower should not be allowed an "inequitable windfall" by accepting money from a loan, then seeking to rescind without restoring the loan proceeds.  *See Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003).  Here, because White concedes she has not offered, or cannot offer, to restore what she received from the Loan (*See* ER 12; OB 11, ¶¶ 21, 22), her attempt to cancel the Note fails as a matter of controlling law.

**(d)** **Chase Is Not Estopped From Asserting Its Rights As The Servicer**

White argues that the TDUS statement that Chase was the foreclosing beneficiary (ER 52 (¶ 34-35)) somehow estops Chase "from asserting that it acted as an agent for the beneficiary." (OB 32.) However, White cites to no authority for such an "estoppel" theory, nor can she because nothing prevents a beneficiary under a deed of trust from also acting as the servicer for the loan. Furthermore, even if Chase was not the beneficiary, it was at the very least an authorized agent vested with the ability to foreclose under the applicable foreclosure statutes. Cal. Civil Code § 2924(a)(1).

**C.** **WHITE ABANDONS ALL OF HER OTHER WRONGFUL FORECLOSURE ARGUMENTS ON APPEAL**

"Claims not made in an opening brief in a sufficient manner to put the opposing party on notice are deemed waived." *Tri-Valley CAREs v. U.S. Dept. of Energy,* 671 F.3d 1113, 1130 (9th Cir. 2012); *accord Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992 (2002) (holding that claims must put parties on sufficient notice of underlying arguments, or arguments are deemed waived); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.). White's abandoned wrongful foreclosure arguments also fail for the reasons below.

### 1. Securitization Did Not Pay Off The Note

White abandons the argument, raised with the court below, that her note has been paid off by virtue of the securitization. (ER 33-34 (¶¶ 55, 57).) Nevertheless, numerous courts have discredited White's securitization theory that a lender's assignment of a note to a mortgage pool or receipt of money from third parties somehow extinguishes a borrower's debt. *See, e.g., Wadhwa v. Aurora Loan Servs., LLC,* 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (rejecting theory that "assignment of the note to a [REMIC] renders any interest in the property other than plaintiffs' somehow invalid"); *Hafiz,* 652 F. Supp. 2d at 1043 (argument that "all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool" is "both unsupported and incorrect"). Consistent these cases, the District Court correctly ruled that White's theory "that the Note was paid when it was securitized is wrong as a matter of law." (ER 19-20.)

### 2. White Does Not Contest That Chase Need Not Be The Holder In Due Course Of The Note

White also waives the argument, raised in her Complaint, that the foreclosure was invalid under California Commercial Code sections 3301 and 3309 because Chase was not the Note's holder in due course. (ER 26 (¶ 24).) Nonetheless, the District Court correctly ruled that courts have declined to require that a foreclosure sale comply with the California Commercial Code governing

negotiable instruments.  (ER 14 (11:5-7) (citing *Debrunner*, 204 Cal. App. 4th at 440-41).  Enforcement of the note and foreclosure of the collateral for payment of the note, an *in rem* action, are theoretically distinct.

### 3.    White Does Not Contest That The NOD Was Proper

White alleges that the NOD recorded by CRC was false, violating California Civil Code sections 2015.5 and 2923.5 because the attached declaration was not made under penalty of perjury.  (ER 27 (¶ 28)).  This argument has been waived on appeal.  Nonetheless, this argument fails under *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010)  which holds that the "idea that this 'declaration' must be made under oath must be rejected." *Id.* at 219.

### 4.    White Does Not Contest That CRC Did Not Need To Receive Delivery Of The Note Or The DOT

Another issue waived on appeal is White's allegation that CRC did not receive delivery of the Deed or Note.  (ER 27 (¶ 27).)  The District Court did not address the merits of this argument because the claim was disposed by the tender rule.  (ER 15-16.)  Nonetheless, even if White could allege tender of the full Loan amount owed, there is no requirement in California that the trustee must receive delivery, or otherwise possess, the DOT or Note.  *Debrunner*,  204 Cal. App. 4th at 437-38.

### 5. Alternatively, White Cannot Contest That The Foreclosure Claims Were Properly Dismissed Under The Tender Rule

White argued before the District Court that she did not need to allege tender because the sale of the property was void, not merely voidable.  (ER 12.) However, Plaintiff's allegations concerning Commercial Code section 3301 and 3309 (ER 26 (¶ 24)), California Civil Code sections 2015.5 (ER 27-29 (¶ 28, 34-35)), the delivery of the note and deed (ER 27 (¶ 27)), and misrepresentation related to the TDUS (ER 29 (¶¶ 34-35)), would at best render the foreclosure sale merely voidable because they concern alleged irregularities in the foreclosure sale. *See Little v. CFS Serv. Corp.,* 188 Cal. App. 3d 1354, 1358 (1987).

Because the sale would only be voidable, White must allege tender and her failure to do so bars the Foreclosure Claims.  *Dimock v. Emerald Props.,* 81 Cal. App. 4th 868, 877 (2000).  "A full tender must be *made* to set aside a foreclosure sale, based on equitable principles." *Stebley v. Litton Loan Servicing*, 202 Cal. App. 4th 522, 526 (2011) (affirming judgment following demurrer where plaintiffs attacked foreclosure sale but failed to allege tender).  "[M]erely alleged *offers* to tender" are not enough to attack an already-completed foreclosure sale. *Id.*  "The rules which govern tenders are strict and are strictly applied … ." *Nguyen*, 105 Cal. App. 4th at 439.  "[I]t is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Id.*

27

Here, White never challenges the District Court finding that she has failed to tender.  (*See* ER 12.)  Accordingly, there is no basis to disturb the decision below dismissing each of the Foreclosure Claims under California's tender requirement.

### D.    THE DISTRICT COURT PROPERLY RULED THAT THE TPA DOES NOT CREATE AN ENFORCEABLE CONTRACT TO MODIFY THE LOAN

#### 1.    Chase Did Not Agree To Modify White's Loan

##### (a)    The Unambiguous Terms Of The Trial Plan Attached To The Complaint Control

White alleges she entered into a TPA (ER 30 (¶ 40)) which she attaches to her Complaint.  (ER 54 (Ex. 7).)  She then makes an unsupportable leap to claim that "Chase's refusal to offer Plaintiff a home loan modification" after review of her application at least twice constitutes a breach of the TPA.  (ER 32 (¶ 45).)  The TPA, however, does not contain language to support her claim:  it states only that Chase "will *reevaluate* your application . . . and determine *if we are able to offer you a permanent workout solution*."  (ER 54 (Ex. 7).)  Here, there was no breach of this provision because it is undisputed that Chase *did* reevaluate White's application on several occasions, and ultimately denied a permanent modification of her Loan.  (OB 24; ER 31 (¶¶ 43, 44).)

##### (b)    Chase Was Not Required To Offer A Modification

As a matter of well-settled California law, Chase also was never under any requirement or duty to provide White with a permanent loan modification.  To the

contrary, California law is clear that a lender has no duty to modify a loan and a borrower has no inherent right to a modification.  *See Vuki v. Superior Court,* 189 Cal. App. 4th 791, 794 (2010) (no right to modification under Civil Code §§ 2923.52 or 2923.53); *Mabry*, 185 Cal. App. 4th at 223 ("to have *required* loan modifications would have run afoul of federal law").  These rulings follow the general rule that there is no common law duty to modify a contract.  *Vella v. Hudgins*, 151 Cal. App. 3d 515, 519 (1984).  *Corvello v. Wells Fargo Bank, N.A.,* --- F.3d ----, 2013 WL 4017279 (9th Cir. Aug. 8, 2013) does not dictate otherwise.

### (c)    White's Trial Plan Agreement Was Not Entered Into Pursuant To The HAMP Guidelines

White suggests she can amend her Complaint to allege that the loan modification review violated HAMP.  (OB 45.)  However, because the TPA was not entered into under the auspices of HAMP as it was a non-HAMP loan, there was and can be no violation of HAMP.  (ER 54.)  Moreover, White's Loan did not qualify for HAMP because the loan amount well exceeded the limit that qualifies home mortgage loans for this program.  *See* U.S. Dept. of Treasury, HAMP Suppl. Directive 09-01, p. 3 (Apr. 6, 2009) ($729,500 limit for single homes).  Her reliance on *Corvello* is misplaced.  *Corvello*, and the cases relied upon by that court (2013 WL 4017279, at *4) concerned Trial Payment Plans ("TPP") entered into under the HAMP program, which has its own set of guidelines and regulation.  Thus, *Corvello* discussed at length and adopted the reasoning of the "leading case

on contractual obligations of banks under TPP agreements," namely, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). 2013 WL 4017279, at *5. "In this case [*Wigod*], HAMP guidelines provided precisely this 'existing standard' by which the ultimate terms of Wigod's permanent modification were to be set." *Wigod*, 673 F.3d at 565. Moreover, *Wigod* specifically relied upon the U.S. Dept. of Treasury, HAMP Supplemental Directive 09-01 (Apr. 6, 2009), stating at page 18: "[i]f the borrower complies with terms and conditions of the [TPP], the loan modification *will become effective* on the first day of the month following the trial period…" *Wigod*, 673 F.3d at 557 (emphasis added).

The "critical" HAMP guidelines requiring a permanent loan modification upon the satisfaction of specific conditions do not apply in the present case, and the underlying basis for the Court's holding in *Corvello* thus does not exist. *See Lazo v. Bank of Am., N.A.*, 2012 WL 1831577, at *6 (N.D. Cal. May 18, 2012) (finding that, in the non-HAMP context, there were "no guidelines for the parties to use to determine the essential terms of a permanent loan modification. And without these essential terms or a way to derive them, Plaintiffs have not alleged the existence of a sufficiently definite, and thus enforceable, contract that requires BANA to permanently modify their loan"). Further, contrary to *Corvello*, there are no terms in White's TPA that if she complies with the terms and conditions she *will* receive a loan modification. Instead, Chase's only obligation if White had made all her

30

payments was to "reevaluate [White's] application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current." Chase complied in full when it reevaluated White for a permanent modification.

Accordingly, White cannot amend to allege any violation of HAMP.

### 2.    Chase Evaluated White's Application And Denied It

White argues that Chase "has a contractual duty to actually perform the necessary and appropriate steps to process and evaluate her applications and information in a reasonable and good faith manner – not arbitrarily." (OB 43.) However, White's underlying allegations show that Chase did perform and her narrative does not demonstrate an arbitrary decision. Chase should not be rendered liable for giving a borrower every consideration. As shown by White's allegations, Chase reviewed White's application, asked for supplemental information, pored over successions of documents concerning White's then-current financial situation, and worked with her for over two years (ER 30 (¶ 39)). Chase then declined a permanent modification of the Loan terms not once, but also, after allowing a another opportunity for review, at least *twice*. (ER 11 (¶ 44); OB 24.) Chase went well beyond its contractual obligations by offering to evaluate White again once Chase fulfilled its obligation to review her the first time. Moreover, because the TPA provided Chase with the discretion to "determine" whether a permanent loan modification would be offered, Chase's decision to deny the permanent

31

modification cannot be a breach of contract.

### 3.    Chase Did Not Agree To Refrain From Foreclosure

White's argument that Chase breached the TPA by "pursuing the foreclosure process during the evaluation period" (OB 43) is refuted by the face of the TPA, which provided for modified payments for only three months and stated the "original terms of [White's] loan remain in full force and effect." (ER 54.) Her argument is also refuted by the successive denials of a modification, i.e., there was more than one "evaluation period," at the end of which White received a denial response. Here, White defaulted in February 2009 (ER 45 (Ex. 3)) and CRC recorded the NOD on May 26, 2009. Chase then sent White the TPA in August 2009 (ER 30 (¶ 40)) while it evaluated her application. CRC did not record the first NOTS until August 26, **2010**, a full year later and well beyond the three months contemplated by the TPA. (ER 46-48.) Chase did not "jump the gun."

Moreover, White acknowledges the recordation of the NOTS *followed* an evaluation and denial of her application the first time. (OB 24.) White thus admits she was evaluated for a loan modification as contemplated by the TPA. Moreover, in furtherance of Chase's attempt to forge a work-out with White, CRC did not record the second NOTS until December 21, 2010. (ER 49-51.) Then, after Chase notified White of the denial on January 31, 2011 (ER 31 (¶ 44)), Chase waited another several months before proceeding with the sale on April 18, 2011. (ER 29

32

(¶ 33).)

Thus, Chase *did* refrain from pursuing the foreclosure process for the three months covered pursuant to the TPA and voluntarily thereafter to give White an opportunity to work out the Loan.  The noticed sale did not occur until *many months after* a first decision on White's application was made, and several more months after her second loan modification review and decision.  White does not allege any foreclosure activities were conducted during the three-month term of the TPA, or even before her first review was completed.  Moreover, Chase refrained from filing a NOTS for 18 months after White's default in February 2009, and from conducting a foreclosure sale for over two years after White's default.  No term of the TPA was ever breached by Chase.

### 4.      The Implied Covenant Claim Depends On The Existence Of An Enforceable Contract, Which Cannot Stand Here

The implied covenant "does not extend beyond the terms of the contract at issue," nor substitute for it.  *Poway Royal Mobilehome Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460, 1477 (2007).  Instead, the "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract."  *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004); *see also Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (implied covenant will not apply where "no express term exists on which to hinge an implied duty").  "If the allegations do not go beyond

the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

White's single-paragraph claim for Breach of the Implied Covenant merely duplicates her claim for Breach of Contract.  (ER 32 (¶ 49).)  The argument on this appeal does not dispute that this claim is a duplicate of the Breach of Contract claim.  (OB 44-45.)  Moreover, White fails to "hinge" this claim to any express terms of the TPA, in either her Complaint or in the Opening Brief.  Further, while the Prayer is not organized by claim, she does not pray for any different damages or relief than in her Breach of Contract claim.  Here, the District Court properly dismissed this claim because it merely duplicated her "invalid claim that Chase breached the TPA by instituting foreclosure proceedings while the agreement was in effect."  (ER 18.)

## E.  THE OTHER FORECLOSURE-RELATED CLAIMS WERE PROPERLY DISMISSED

Because White's remaining claims for Fraud, Quiet Title, and Declaratory and Injunctive Relief merely duplicate the Wrongful Foreclosure claims (ER 19), they fail for the same reasons as discussed above.  (*See supra* Sec. VII.B.-C.) They also individually fail for the additional reasons as discussed below.

34

### 1.     The Fraud Claim Was Properly Dismissed

White's two-paragraph Fraud claim merely incorporates by reference prior allegations in the Complaint.  (ER 33 (¶ 50).)  She merely points to the incorporated NOD and TDUS allegations from her Wrongful Foreclosure claim as the basis for her Fraud claim.  (ER 26-27 (¶¶ 25, 27, 34-35)).  However, the Opening Brief misleadingly presents her arguments as if they were quotes from the Complaint.  (OB 46-47 (¶¶ 1-4).)

#### (a)     The Recorded Documents Truthfully State Chase Was The Beneficiary Under The Deed of Trust

White argues that the statement in the TDUS that Chase was the beneficiary under the DOT was false.  (OB 46-47.)  However, as discussed *supra* in Section VII.B.1.(b), White provides no allegation to support her bare conclusion that Chase did not possess the beneficial interest in the DOT.  Accordingly, the statement in the TDUS was not false or a misrepresentation.

#### (b)     White Does Not Allege Reliance Or Damage

White fails to allege or argue on appeal that she relied on the recorded documents to her detriment.  To the contrary, White alleges she defaulted on her Loan because of her financial trouble, as opposed to any reliance on an alleged misrepresentation within the recorded documents.  (ER 25 (¶ 16).)  If White truly had sufficient funds on hand to make her monthly payments but chose not to pay, then she could have cured her default at any time during the foreclosure

proceedings.  The District Court thus correctly ruled that White's fraud claim fails

because she does not allege reliance or damage.  (ER 19 (16:7-24).)

### 2.    The Quiet Title Claim Was Properly Dismissed

"[A] Cause of Action for Quiet Title is an improper means of challenging a

foreclosure where, as here, the foreclosure has already occurred."  *Eng*, 2012 U.S.

Dist. LEXIS 120694, at *8 (citing *Lopez v. Chase Home Fin., LLC,* 2009 U.S. Dist.

LEXIS, at *7 (E.D. Cal. April 9, 2009) (holding "[i]f the foreclosure is successful,

title will change, and the quiet title claim is an improper means to challenge

foreclosure").  Here, as White waited a year after the sale took place to file suit,

she thus cannot challenge the now completed foreclosure through a Quiet Title

claim.  (ER 52 (Ex. 6); ER 21.)

### 3.    The Purported Declaratory and Injunctive Relief Claim Was Properly Dismissed

White's claim for "Declaratory and Injunctive Relief" fails because it is

predicated only on her other failed theories alleged elsewhere in the Complaint.

*See Hafiz,* 652 F. Supp. 2d at 1043 (declaratory relief requires weighing the

underlying claims); *id.* at 1049 (injunctive relief is a remedy that relies on

underlying claims).  The District Court thus properly ruled that White's claim fails

because it lacks a meritorious predicate claim.  (ER 20 (17:4-5).)

Moreover, it is black letter law that injunctive relief is a remedy, not a cause

of action.  *Marlin v. AIMCO Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007);

*Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 984-85 (2003) ("[A] request for injunctive relief is not a cause of action. Therefore, we cannot let this 'cause of action' stand."). Under these cases, the "claim" fails on this additional ground.

## F.    THE COMPLAINT WAS PROPERLY DISMISSED WITH PREJUDICE

The District Court did not abuse its discretion in denying White leave to amend her Complaint. (ER 20.) Because White verified the Complaint under penalty of perjury, she cannot change any of her allegations without contradicting her previous verified statements. As amendment of the Complaint cannot change White's verified allegations, amendment would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Thus, White cannot now amend her Complaint to contradict her verified allegations that she defaulted on a loan that Chase serviced, and that she gave CRC the contractual right to foreclose in the event of her default. (ER 23 (¶¶ 8, 14, 16, 18); ER 41 (Ex. 2); ER 45 (Ex. 3).) She also cannot change her allegations that WaMu securitized her loan and Chase purchased WaMu's assets. (ER 24 (¶ 10).)

White also cannot contradict the TPA or her allegation that Chase performed under the TPA by reviewing and denying her modification application on at least two occasions. White also cannot amend her Complaint to contradict the recorded and attached loan and foreclosure documents. White also cannot credibly allege tender given her verified allegations of financial troubles and lack of any equity in

the property.

## VIII.  <u>CONCLUSION AND REQUEST FOR RELIEF</u>

For all of these reasons, the Court should affirm the District Court's

dismissal of the Complaint with prejudice.

Submitted by:

Dated:  October 22, 2013                  Glenn J. Plattner
                                          Rosario L. Vizzie
                                          Tony Tootell
                                          James J. McGrath
                                          **BRYAN CAVE LLP**


                                          By:  */s/ Tony Tootell*
                                                Tony Tootell
                                          Attorneys for Defendant-Appellee
                                          JPMORGAN CHASE BANK, N.A.

38

## <u>STATEMENT OF RELATED CASES</u>

JPMorgan Chase Bank, N.A. is not aware of any related cases.


Dated:  October 22, 2013


*/s/ Tony Tootell*
Tony Tootell
Attorney for Defendant-Appellee
JPMORGAN CHASE BANK, N.A.

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO</u>

## <u>FED.R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1</u>

## <u>FOR CASE NO 12-56494</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 9,211 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 2010 14 point Times New Roman font.

Dated:  October 22, 2013

*/s/ Tony Tootell*_____
Tony Tootell
Attorney for Defendant-Appellee
JPMORGAN CHASE BANK, N.A.

| 9th Circuit Case Number(s) | 12-56494 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Oct 22, 2013 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Cindy M. White
611 Mulberry Ave
Santa Barbara, CA 93101

Signature (use "s/" format)   s/Michelle Hicks